IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD R. PETERSON, not individually )
but as Chapter 7 Trustee for the )
bankrupt estates of Lancelot )
Investors Fund, L.P., Lancelot )
Investors Fund II, L.P., Lancelot )
Investors Fund, Ltd., Colossus )
Capital Fund, L.P., and Colossus )
Capital Fund, Ltd., ) No. 10 C 274
 )
     Plaintiffs, )
 )
  v. )
 )
**McGLADREY & PULLEN, LLP, McGLADREY &** )
**PULLEN, CAYMAN, SIMON LESSER, RSM** )
**McGLADREY, INC.,** and **H&R BLOCK, INC.** )
 )
     Defendants. )
 )

### MEMORANDUM OPINION AND ORDER

Plaintiff is the Chapter 7 Trustee for the bankrupt estates of several investment funds (collectively, "the Funds") that failed after being revealed as instrumentalities of a Ponzi scheme orchestrated by Thomas Petters. In this action, plaintiff claims that the Funds' outside auditors, McGladrey & Pullen, LLP, McGladrey & Pullen, Cayman, and Simon Lesser (collectively, "McGladrey"), were negligent in conducting the Funds' audits, with the result that they failed to discover the Ponzi scheme, causing the Funds to lose over $1.5 billion. Plaintiff also claims that RSM McGladrey ("RSM"), a corporation related to the McGladrey firm, is vicariously liable, and liable as McGladrey's alter ego, for McGladrey's alleged negligence. Finally, plaintiff claims that H&R Block, Inc., a corporate parent of both McGladrey and RSM, was unjustly enriched by "the structure

it put into place" among the three entities, and is therefore liable for equitable restitution of plaintiff's claimed losses. Each of these defendants has moved to dismiss the complaint. I grant their motions for the reasons that follow.

I.

The following factual summary is based on the amended complaint in this case and on the complaint in a separate action plaintiff filed in this district's bankruptcy court (the "Bell" case), in which plaintiff seeks to recover from Gregory Bell for the same losses alleged here.[1] In or around late 2001, Gregory Bell established the Funds to invest in short-term trade finance notes. The notes evidenced secured loans made to entities controlled by Petters, which purportedly engaged in the business of acquiring consumer goods such as high-end electronics, then selling the goods to retailers such as Costco. Bell "personally represented" the Funds as their agent, director, manager, or partner.

---

[1] The bankruptcy case is No. 08-28225. McGladrey argues that I may consider the complaint in that action on the authority of *Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990), which held that "[a]dversary proceedings in a bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case." Lower courts have similarly held that "'case' in Bankruptcy is commenced by the debtor's filing of a bankruptcy petition, and any subsequent litigation...is simply a part of the case as a whole." *Artra Group, Inc. v. Salomon Bros. Holding Co.*, No. 95 C 5233, 1996 WL 637595 (N.D. Ill. Oct. 31, 1996) (Williams, J.) (quoting *Spencer v. Shearer (In re Shearer)*, 167 B.R. 153, 156 n. 1 (Bankr. W.D. Mo. 1994)(quotations and alterations omitted). Plaintiff does not dispute that I may consider both complaints in ruling on the present motions.

2

In a typical investment transaction, one of the Funds would loan money to a Petters special purpose vehicle called Thousand Lakes LLC, which would issue a promissory note to the Fund. Thousand Lakes purportedly used the loan to finance the purchase of consumer goods from suppliers called Enchanted Family Buying Company and Nationwide Resources International, Inc. Thousand Lakes then professedly sold the underlying goods to retailers pursuant to purchase orders that predated Fund's loan to Thousand Lakes. The Funds earned revenue from interest payments on the Thousand Lakes notes, which were ostensibly secured by the underlying goods, account receivables, and credit insurance. As further investment protection, the Funds purportedly had a "lock-box" arrangement with Thousand Lakes which gave the Funds control over the bank account into which the retailer was to wire payments for the underlying goods.

To induce investments, the Funds provided potential investors a Confidential Information Memorandum (or "CIM") describing the Funds' investment strategy, including the terms and protections described above.[2] Between 2002 and 2008, the Funds raised over $2.5 billion from individuals, retirement plans, individual retirement accounts, trusts, corporations, partnerships and other hedge funds. But in September of 2008, it was revealed that the Funds' investments were a total sham: there were no underlying goods at all, and the purchase orders and invoices purporting to relate to goods purchased

---

[2]Plaintiff asserts that the CIMs relating to the various funds were similar in all material respects.

by retailers like Costco from Enchanted Family Buying Company and Nationwide Resources International were fabricated. These latter entities were merely shell companies with no real operations. Early investors in the Funds were paid not out of any money raised from the sale of consumer goods but from funds invested by subsequent lenders.

Plaintiff asserts that Bell had no knowledge of the Ponzi scheme prior to the summer of 2008, but that he was negligent in managing the Funds by "failing to conduct sufficient investigations to verify the legitimacy of the activities of" the various Petters entities, "and to confirm the validity of the collateral, security interests, and guarantees that were supposed to be obtained as security for repayment of the Notes." Plaintiff also alleges that Bell affirmatively joined the Ponzi scheme on or about February 26, 2008.[3] Thereafter, Bell participated in concealing from investors the true nature of the Funds' "investments" by structuring "roundtrip" payments between the Funds and certain Petters entities.

McGladrey audited the Funds' financial statements for the years ending 2007 and 2008.[4] In planning and preparing its audit,

---

[3]This allegation, which appears in ¶ 9 of the Bell complaint, seems to be inconsistent with the allegation in ¶ 40 of the amended complaint that "[p]rior to the summer of 2008, Bell believed the Lancelot loans to Thousand Lakes to be legitimate and successful." I need not try to interpret or resolve this inconsistency, since it is immaterial to my resolution of the present motions.

[4]The amended complaint states that "McGladrey audited the 2006 and 2007 financial statements of [certain of the Funds] and issued audit opinions for those funds in March 2007 and March 2008," Am. Compl. ¶ 35, and also that "McGladrey and McGladrey Cayman audited the Funds' financial statements for the years ending 2007 and 2008."

4

McGladrey relied, in part, on the CIM. In each of McGladrey's audit reports for the Funds, McGladrey stated that "[a]n audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements." Nevertheless, McGladrey failed to discover, for example, that the documents relating to the sale of fictitious underlying goods by shell corporations were fraudulent, or that the wire transfers into the Thousand Lakes "lock-box" accounts were made not by retailers but by entities controlled by Petters.

II.

A. McGladrey's motion

McGladrey asserts four grounds for dismissal: 1) the "exculpatory clause" in the parties' contract bars the action; 2) the doctrine of *in pari delicto* bars the plaintiffs' claims; 3) the complaint fails to allege causation; and 4) the complaint fails adequately to allege damages. Several of these grounds may have merit; but because it is clear that plaintiff's claims are barred by the doctrine of *in pari delicto*, I grant McGladrey's motion on that basis.

The doctrine of *in pari delicto*--whose name finds its roots in the Latin sentence, *in pari delicto potior est conditio defendantis*, which means, "where the wrong of both parties is equal, the position

---

Am. Compl. ¶ 42. This leaves me uncertain about the years in which the audits were conducted, but this inconsistency–if it is one–does not influence my resolution of the present motions.

of the defendant is the stronger," *Knauer v. Jonathon Roberts Financial Group, Inc.*, 348 F.3d 230, 236 (7th Cir. 2003)--"embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *King v. First Capital Financial Services Corp.*, 828 N.E. 2d 1155, 1173 (Ill. 2003) (citation omitted). As the Supreme Court has explained, "the equitable defense of *in pari delicto*...is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988). McGladrey argues that plaintiff's allegations of wrongdoing by Bell, acting as the Funds' agent, mandate the conclusion that plaintiff is at least at equal fault for plaintiff's injury and thus cannot recover from defendants.

Plaintiff's tripartite response is that: *in pari delicto* does not apply to trustees in bankruptcy; that even if the doctrine applies to bankruptcy trustees, the allegations against Bell do not constitute sufficient wrongdoing to subject plaintiff to the defense; and that any wrongdoing by Bell was adverse to the Funds' interest and therefore outside the scope of the *in pari delicto* doctrine. Plaintiff is wrong on all counts.

Plaintiff acknowledges that there is no controlling authority in the Seventh Circuit or Illinois on whether the defense of *in pari delicto* is available against a bankruptcy trustee. But the First, Second, Third, Sixth, Eighth, Tenth, and Eleventh Circuits, as well

as a recent decision from a district court in this circuit, have all held that it is, in some cases expressly distinguishing the authority and arguments on which plaintiff relies. *E.g., Official Committee of Unsecured Creditors of P.A., Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006) (allowing defense of *in pari delicto* against bankruptcy trustee and distinguishing *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995), which involved a state law receiver, rather than a bankruptcy trustee); *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 357 (3rd Cir. 2001) (same, agreeing with the court's reasoning in *In re Hedged-Investments Associates, Inc.*, 84 F.3d 1281, 1285 (10th Cir. 1996), that the public policy underlying *Scholes* does not prevail in the bankruptcy context because it does "not comport with the plain language of section 541 [of the Bankruptcy Code].") *See also Nissel v. Lernout*, 469 F.3d 143, 153 (1st Cir. 2006) ("[T]here is no 'innocent successor' exception available to a bankruptcy trustee in a case in which the defendant successfully could have mounted an in pari delicto defense against the debtor."); *Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1276 (10th Cir. 2008) ("[I]t is well established that *in pari delicto* may bar an action by a bankruptcy trustee against third parties who participated in or facilitated wrongful conduct of the debtor")(citing precedent from the Second, Third, Sixth, and Eighth Circuits); *Grede v. McGladrey & Pullen LLP*, 421 B.R. 879, 885 (N.D. Ill 2009) (bankruptcy trustee not immune" to defense of *in pari delicto* because "[t]he essential principle of

7

bankruptcy law is that the trustee stands in the exact place of the debtor")(distinguishing *Scholes* and declining to follow dicta in *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998), in light of "clear consensus" among courts of appeals that *in pari delicto* defense is available against bankruptcy trustee). I concur with the substantial weight of persuasive authority that favors allowing *in pari delicto* to be asserted against a trustee in bankruptcy.

Plaintiff's second and third asserted bases for declining to apply the doctrine do not require extensive analysis. The amended complaint in this action and in the Bell case unequivocally allege wrongdoing by Bell and the Funds' management. In the Bell case, plaintiff seeks to hold Bell, and the Funds' management companies, accountable for the wrongdoing that directly caused the losses that in this case plaintiff claims McGladrey indirectly caused through its negligent failure to uncover the Ponzi scheme. This is precisely the type of situation in which the Seventh Circuit has applied *in pari delicto* principles. *See, e.g.*, *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 454-55 (7th Cir. 1982) (participant in fraud had no claim against auditors for failure to prevent the fraud, reasoning that "if the owners of the corrupt enterprise are allowed to shift the costs of its wrongdoing entirely to the auditor, their incentives to hire honest managers and monitor their behavior will be reduced.") Plaintiff's meandering argument that Bell did not engage in wrongdoing during what plaintiff claims is the "relevant time period" prior to January 5, 2008 (the cut-off date for the later of

McGladrey's two audit opinions) is not only non-responsive to the principles explained in *Cenco*, it conflicts with the allegations of the Bell complaint (which seeks to hold Bell liable for his mismanagement of the Funds beginning in 2002) and confuses the basic rationale behind *in pari delicto* (that "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing" *King v. First Capital Financial Services Corp.*, 828 N.E. 2d 1155, 1173 (Ill. 2003)) with the separate issue of causation. For all of these reasons, plaintiff's second argument fails.

*Cenco* also provides the seeds of an answer to plaintiff's third argument, that the so-called "adverse interest" exception to the application of *in pari delicto* applies. Guided by "the underlying objectives of tort liability...to compensate the victims of wrongdoing and deter future wrongdoing," *Cenco* predicted that Illinois courts would hold that fraud by corporate managers is imputed to the corporation where "managers are not stealing from the company-that is, from its current stockholders-but instead are turning the company into an engine of theft against outsiders-creditors." *Cenco*, 686 F.2d at 454. Indeed, courts have held that the narrow adverse interest exception applies only where the corporate officers "act entirely for their own interests and the actions do not benefit the corporation." *Grede*, 421 B.R. at 886. The Bell complaint alleges that Bell and the Funds' management companies raised more than $2.5 billion based on the false representations in the CIMs. The Funds clearly benefitted from the alleged misconduct,

9

even if the benefit was "of limited duration." *Id.* at 886. Accordingly, the adverse interest exception does not apply.

B. <u>RSM's and H&R Block's motions</u>

Against RSM, plaintiff asserts a claim for "vicarious liability for the McGladrey Defendants' negligence" and "alter ego liability for McGladrey's negligence." Irrespective of any other basis there may be for dismissing these claims (RSM argues that the complaint is insufficient to raise a plausible inference that RSM controlled McGladrey's audit or that the corporate veil between the two companies should be pierced), the *in pari delicto* principles that preclude plaintiff from seeking redress for McGladrey's alleged negligence from McGladrey apply equally to plaintiff's claims against RSM.

Plaintiff's claim against H&R Block is for equitable restitution. Plaintiff's elaborate theory of liability is that H&R Block was unjustly enriched by the corporate structure it established among itself, RSM, and McGladrey, which resulted in the "siphoning [off] of a significant percentage of McGladrey's gross income." Plaintiff contends that this state of affairs was to the Funds' detriment because McGladrey's negligent audit was the result of McGladrey's inability to "attract the quality of professionals needed to competently perform its function as a licensed firm of public accountants." Even assuming that plaintiff could find support in the

law for this tenuous legal theory, at bottom this claim also rests on McGladrey's alleged negligence, for which plaintiff may not recover because of Bell's own wrongdoing in the name of the Funds.

III.

For the foregoing reasons, defendants' motions are granted.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**

United States District Judge

**Dated:** November 3, 2010